## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

### July 7, 1920.

## THE PEOPLE v. IGNATZ LUFT.

(192 App. Div. 713.)

(1) PENAL LAW, SECTION 751, SUBDIVISION 12—FALSE STATEMENT OF RESULT OF CANVASS OF BALLOTS.

The word "wilfully" as used in subdivision 12 of section 751 of the Penal Law, which makes it a misdemeanor wilfully to make a false statement of the result of a canvass of the ballots cast at an election, means something more than a voluntary act, and more also than an intentional act which in fact is wrongful; it includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness.

(2) SAME—"WILFULLY" DEFINED—CHARGE.

Accordingly, on a prosecution of a poll clerk for wilfully making a false statement of the result of a canvass at a primary election, it was error for the court to charge in substance and effect that an act is done wilfully, within the meaning of the statute, which is not done under duress or restraint.

APPEAL by the defendant, Ignatz Luft, from a judgment of conviction, rendered in the Supreme Court, Extraordinary Trial Term, New York county, on the 19th day of April, 1918, upon the second count of an indictment, which count charged the defendant with the crime of making a false statement of the result of the canvass of the ballots cast at an official primary election held on September 19, 1917.

*Emil E. Fuchs,* of counsel (*Sanford H. Cohen* with him on the brief), for the appellant.

*Robert S. Johnstone,* of counsel (*John Caldwell Myers, Deputy Assistant District Attorney,* with him on the brief), *Edward Swann, District Attorney,* for the respondent.

SMITH, J.:

The indictment was for a violation of sections 751 and 766 of the Penal Law. The second count of the indictment under which the conviction was had was under subdivision 12 of section 751, which makes a misdemeanor the act of any inspector who "wilfully omits, refuses or neglects to do any act required by the Election Law or otherwise by law, or violates any of the provisions of the Election Law, or makes or attempts to make any false canvass of the ballots cast at a political caucus, primary election, or convention, or a false statement of the result of a canvass of the ballots cast thereat."

Section 70 of the Election Law (as amd. by Laws of 1917, chap. 703) provides for the organization and conduct of official primaries, prescribes the officers who shall act thereat and also provides that "Subject only to such differences as are herein provided or as may be necessary, an official primary shall be conducted in the same manner as the general election." Section 368 of the Election Law, which is in article 10 (as renumbered from article 14 by Laws of 1913, chap. 800), relating to "Conduct of Elections and Canvass of Votes," provides the "Method of Canvassing." Subdivision 1 of section 368 of the Election Law (as amd. by Laws of 1913, chap. 821, and Laws of 1914, chap. 244) provides that the canvassing of the ballots should be as follows: "The chairman of the board of inspectors shall personally unfold each ballot of the kind then to be canvassed in such a manner that its face shall be down and all marks thereon shall be wholly concealed, and he shall place all the ballots, so unfolded and with their face down, in

one pile.    He shall then take up each ballot in order, turn it
face up, and announce in a loud and distinct voice, the vote
registered on the first section or that the ballot is void or that
the section is blank, as the case may be.    He shall then turn
the ballot face down and place it in a new pile.    When he has
announced the votes on the first sections of all the ballots of the
kind then to be canvassed, and the poll clerk's tallies made as
hereinafter provided are proved to be correct, the official return
provided for in article thirteen shall be filled out and signed.
\*   \*   \*   As each vote is announced each poll clerk shall imme-
diately tally it in black ink, with a downward stroke from
right to left upon the official tally sheet provided for the pur-
pose, also carefully tallying one for each blank or void vote.
Each poll clerk as he tallies a vote shall clearly announce the
name of the candidate for whom he tallies it, or that he 'tallies
the vote blank or void as the case may be, or in case of a ques-
tion submitted that he tallies the vote ' Yes ' or ' No ' as the
case may be, and until such announcement by each poll clerk
the chairman shall not announce another vote   \*   \*   \*   The
tally sheets having been thus prepared, verified, and closed, the
inspectors and poll clerks shall sign the certificate at the foot of
each sheet in the places indicated thereon."

By section 85 (as amd. by Laws of 1917, chap. 703) it is
provided:   " The chairman only of the board of primary
officers shall unfold the ballots taken from a ballot box."

It is also provided in that section:   " As soon as the polls at
any official primary election shall close, the primary inspectors
shall forthwith publicly canvass and ascertain the result
thereof."

Also:   " The primary inspectors shall proceed to canvass
the vote by counting the ballots found in the ballot boxes
without unfolding them."

In accordance with that law this defendant acted as poll
clerk in the canvass of these ballots.    As the votes were
announced by the chairman there is no claim that the defendant

did not truthfully record such votes as announced.    There is
no proof in the case that he had any knowledge of the fact
that the votes were incorrect as so announced by the chairman,
and there is no proof in the case of any intentional fraud on
defendant's part.    The form of tally sheet and statement of
result blanks for use at primary elections together with the
certificate of the board of primary election inspectors is pre-
scribed by section 79 of the Election Law (as amd. by Laws of
1917, chap. 703), and the duty of making a statement of the
result of a primary election is regulated by section 87 of the
Election Law (as amd. by Laws of 1915, chap. 678).

In charging the jury the court defined the word " intention-
ally," as used in section 766 of the Penal Law, under which the
first count in the indictment was drawn, and upon which count
the defendant was acquitted, and used this language :  " There
is one word there to which I wish to call your attention, because
it has been made a subject of comment by counsel on both sides,
and that is the word ' intentionally.'    It reads, ' Who inten-
tionally makes a false statement of the result of a canvass.'
That is the offense charged against this defendant—that he
intentionally made a false statement.    Gentlemen, the law is
expressed in language that can be understood by every man of
fair intelligence.    There is nothing mysterious or obscure
about the word ' intentionally.'    Each of you, I am sure, has
had occasion to deal with the word in your various walks of
life.    The law says that a man intends to do the act which he in
fact does.    That is a very simple rule.    The law presumes him
to do that, or to intend that which he actually does.    And the
law further presumes him to intend the natural consequences
which follow that act, and his intention may be inferred from
his act.    It does not need, I am sure, any illustration from me
to clarify that, because it is so simple.    Can any one of you
conceive of your doing an act, not having the intention to do
it ?    Look into your daily lives and into your daily transactions.
Can you conceive of your performing an act that your mind

does not dictate you to perform? If any one of you sign a check upon your bank account for the payment of money, the law presumes that you intend to have that money drawn from the bank, and that you intend to sign the check, and the mere fact of your signing the check of itself indicates thought and intention to do it, for the taking of the pen and the tracing of the letters; all that can be done only by the dictates of the mind. I will ask any one of you to try the experiment some time, and see if you can mechanically trace your name, write your name on a paper of importance, without your intending to do so. That is the offense charged against this defendant, that he intentionally made a false return."

Thereafter, in charging upon the definition of the word "wilfully," as used in subdivision 12 of section 751 of the Penal Law, under which the second count in the indictment was framed, the court charged as follows: "There is but one word on that subject which I call your attention to, and that is the word 'wilfully.' The distinction between the word 'wilfully' and the word 'intentionally' is shadowy. In a fine grammatical sense there may be a very narrow distinction, but substantially, so far as these sections are concerned, and so far as the act of this defendant is concerned, it substantially means the same thing. I am sure that you all understand what freedom of will is. An act done in conformity with the freedom of the will is done wilfully. And I ask you if you can conceive that a man in the possession of his senses doing an act against his will except he be under duress, or that he be threatened with violence—in other words, that the freedom of will be restrained or suspended. In such a case, a man if he does an act under those circumstances, the law will relieve him of responsibility; but there is no claim here, gentlemen, so far as I have heard the evidence, and it is for you to say if you have heard any evidence here, that the defendant was under any restraint or that he signed this paper as the result of coercion or that he was threatened or intimidated into signing it. There is no evidence

before you but that the defendant was in full possession of his senses and in absolute control of his own actions when he signed this return, and being so, he signed this return in the way described by the testimony."

To this definition of the word " intentionally," and of the word " wilfully," exception was duly taken by the defendant's counsel.      Thereafter the defendant's counsel asked the court to charge: " And I ask your honor to charge, in view of your honor's charge, as to honesty, that it is the rule that if they believe that this man was absolutely acting honestly in his duties, that they should acquit."      This the court declined to charge in the language of the request.      The defendant's counsel then said: " Your honor stated that they should expect him to do a thing honestly, and I ask your honor to charge the jury that if they believe that he did it honestly, that they should acquit."      This the court declined to charge in the language of the request and an exception was duly taken.      The question presented then upon this appeal is whether the court in its charge properly defined the meaning of the word " wilfully " as used in the statute.

In Wass v. Stephens (128 N. Y. 128) the guiding rule is thus stated: " But the word ' wilfully ' in the statute means something more than a voluntary act, and more also than an intentional act which in fact is wrongful.      It includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness."      While that statement was made in the construction of another statute, it is equally applicable to the interpretation of the statute which is here claimed to have been violated.

Within the rule stated in the Wass Case (supra) we are of opinion that the court did not properly instruct the jury as to defendant's liability under the statute under which he has been convicted.      In People v. Ullman (184 App. Div. 93) the question was presented as to whether the chairman who person-

ally examined the ballots and declared the result was guilty of wilfully taking part in the making of a false canvass, or a false statement of the result of the ballots cast at such canvass. In that case the court did not attempt in its charge to give any definition of the word " wilfully," as in the case at bar. There, as here, the indictment contained two counts, and it was only upon the second count that the defendant was convicted, which makes it a crime to wilfully make a false statement of the result.

Because the jury was improperly instructed as to the rule of the defendant's liability, this judgment must be reversed and a new trial granted.

CLARKE, P. J., DOWLING and PAGE, JJ., concur.

Judgment reversed and new trial granted. Settle order on notice.


## NOTE ON PENAL LAW, SECTION 751.

### Misdemeanors Connected with Political Elections, Primaries, Etc.

*Scope of section.*—This section refers only to primary elections and conventions, or activities with respect to a nomination to office. People v. Extraordinary Trial Term (1918), 184 App. Div. 829, 171 N. Y. S. 922, reversed on other grounds (1920), 228 N. Y. 463. But see People v. Knott (1919), 187 App. Div. 604, reversing (1920) 228 N. Y. 608, wherein it was held that the provision of subdivision 12 of this section that any officer of a political committee or a convention, who wilfully omits, refuses or neglects to do any act required by the Election Law or otherwise by law, or violates any of the provisions of the Election Law, shall be guilty of a misdemeanor, applied to general elections.

*"Wilfully" defined.*—The term "wilfully" as used in this section means something more than a voluntary and intentional act. "It includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness." People v. Calmbacher (1918), 103 Misc. 405; People v. Luft (1920), 192 App. Div. 713; People v. Lilymeld (1920), 192 App. Div. 719.