THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT J. FOSTER, Appellant.

First Department, January 26, 1923.

Crimes — refusal to produce documents before legislative committee on subpœna — no evidence that documents called for were material and pertinent — " wilfully " as used in Penal Law, § 1330, is not synonymous with " intentionally "— error to refuse to charge on behalf of defendant that conviction could not be had if refusal was result only of honest belief that documents were not material and that defendant was acting within his rights — error to charge that defendant could be convicted if he " intentionally refused to produce " the documents — question for jury whether defendant's act was willful.

The word " wilfully," as used in section 1330 of the Penal Law, providing that if a person who is present before a committee of the Legislature shall willfully refuse to produce any material and proper books, papers or documents in his possession or under his control he is guilty of a misdemeanor, is not synonymous with the word " intentionally."

A person charged with a violation of section 1330 of the Penal Law in that he willfully refused, while a witness before a legislative committee, to produce documents in his possession, cannot be convicted in the absence of proof that the documents called for were material and pertinent to the inquiry, and in this case there was no evidence that the documents which the defendant was required to produce were material or pertinent.

It was error for the court to refuse to charge on behalf of the defendant that in order to convict the defendant the jury must find that his refusal was the result of a willful determination to resist the lawful authority of the committee and not the result of an honest belief on his part that he was acting within his rights, and to refuse to charge that if the jury found that there was reasonable ground for the defendant's contending and believing that the documents were not

material to the inquiry being made by the legislative committee and that the defendant acted in good faith and in the belief that said papers were immaterial then he could not be convicted.

It was error for the court to charge that if the defendant willfully, " that is, intentionally, refused to produce " the documents called for, the jury should find the defendant guilty.

The refusal of the defendant to produce the documents, which were reports made to him by operatives engaged by him in connection with his work as a detective in investigating the conditions under which steel work was being erected in the city of New York, was based on his belief that the disclosure of the reports from his subordinates, acting as spies in the labor unions, would endanger their lives, and further that such reports were not pertinent to the inquiry, and there is nothing in the record to show that his refusal to produce the reports was not prompted by an honest belief on his part that they were not material to the inquiry.

It was for the jury to determine as a matter of fact whether or not the defendant's refusal was willful within the meaning of the statute.

Dowling, J., dissents.

Appeal by the defendant, Robert J. Foster, from a judgment of the Supreme Court, rendered against him on the 2d day of February, 1922, convicting him of a violation of section 1330 of the Penal Law by willfully refusing to produce certain documents before a joint committee of the Legislature.

*Austin, McLanahan & Merritt* [*Walter Gordon Merritt* of counsel], for the appellant.

*Charles D. Newton, Attorney-General* [*Samuel Untermyer* and *Stanley L. Richter, Special Deputies Attorney-General,* and *Ferdinand Pecora, Chief Assistant District Attorney,* with him on the brief], for the respondent.

Smith, J.:

The section under which the defendant was convicted provides: " A person who being present before either house of the Legislature or any committee thereof authorized to summon witnesses, wilfully refuses to be sworn or affirmed, or to answer any material and proper question, or to produce upon reasonable notice any material and proper books, papers or documents in his possession or under his control, is guilty of a misdemeanor."

By joint resolution of the Legislature, a committee which has been known as the Lockwood committee was delegated " to fully investigate and ascertain housing conditions and causes for lack of construction of new houses, flats, tenement houses and apartments in the cities of the State and especially in the City of New York; the increases made in rents, and report fully the facts showing such lack of construction and accommodations and the extent of the increases in rents; to investigate and report whether or not the construction of such new buildings is in any way

impeded or injuriously affected by the existence of one or more combinations, associations, agreements or understandings operating or transacting business within the State between manufacturers of and dealers in any of the materials or supplies that enter into the construction of buildings, or between individuals, groups or combinations of individuals, and to ascertain and report to what extent the decrease of such new building operations is due to withdrawal of loanable funds on mortgages on real property that was formerly available from corporations, associations, individuals, trustees or estates and the reasons therefor; * * * and to include in its investigation and inquiry any other thing or matter, not specifically mentioned, deemed by said committee relevant or pertinent to the general question of providing housing accommodations for the people of the cities, and especially of the City of New York, as though mentioned in detail herein."*

At the time in question this committee was investigating the action of certain associations, namely, the National Steel Erectors' Association, Iron League of New York, the American Erectors' Association, and the National Steel Fabricators' Association. These associations had adopted the open shop policy in antagonism to the unions, and it appears in the evidence before the committee that they refused to sell their products to contractors who employed members of the union to erect the steel in the buildings being erected in the city of New York. It appears that the defendant was a detective and was employed by one Walter Drew, who represented these different associations, to investigate the conditions under which the steel work was being erected in the city of New York. The respondent's brief states that the defendant was a private detective who had been employed to do espionage work and the like for the fabricators and erectors of the great steel plants. He employed subordinates, called " operatives." His subordinates, or operatives, made reports to the defendant, which he had in his possession. Some of his subordinates were or became members of the unions and attended their meetings and acted as spies therein. Some of these reports were from some of these subordinates, and one of the reasons for his declining to produce the reports was that it would endanger the lives of those subordinates who had thus acted as spies at the union meetings. He had eight men in his employ, one of whom was engaged in erection work in the State of Texas, two of them in Ohio, and four of them in Boston, which would leave only one man who was engaged upon erection work in the city of New York. There is no specific proof

---

* See N. Y. Senate Journal 1920, vol. 2, Appendix II, Extra Sess. pp. 95, 96.— [REP.

that he had any report from this one man, although there is proof that he had reports from his subordinates. When the witness was before the committee, he declined to produce those reports, some of which he had in his possession. He was subpœnaed to produce all of these reports and directed by the chairman of the committee to produce them all, but he refused to produce any of them.

For the purposes of this discussion I will assume, if any of these reports was material to the subject of the inquiry, that he was required by law to produce that report. The indictment under which he was tried charges that all of these reports were material, and that he willfully refused to produce the said reports or any of them. I will pass over the question of the materiality of these reports to the subject of the inquiry before the committee. The trial judge held, as matter of law, that they were material. It is undoubtedly true that a witness is not allowed to determine for himself what is material, so as to relieve him from a conviction for the violation of this statute. Nor is the committee itself allowed to determine the question of materiality for a contrary purpose. The court must determine whether these documents which the defendant failed to produce were material to the subject of the inquiry. There is no evidence as to what these reports contained, or as to the nature of the reports. This man was engaged, according to the respondent's brief, in espionage work, apparently in ascertaining whether these people who were purchasing this iron and steel were permitting the same to be erected by union men. With the admission of those in charge of the corporation of their refusal to sell to those contractors who were engaged in erecting iron and steel and were using union men, it is difficult to see how the reports of these sub-detectives could be material to the inquiry that was being made by the committee, or to any legislation which might be based upon the result of such inquiry. The immunity of individuals from search and seizure and from forced inquiry into matters irrelevant for any legitimate purpose is to be fully protected. These rights are safeguarded by the Constitution (Art. 1, § 6) itself and by our Bill of Rights, which, so far as here applicable, is section 8 of the Civil Rights Law. On the other hand, no narrow rule of interpretation should apply which would prevent a thorough investigation of any material subject of inquiry, which the Legislature may, through a joint committee, think wise to make. Without passing upon these questions in this opinion, however, I think this judgment will have to be reversed on an error in the charge of the court below.

The statute makes criminal a *willful* refusal to produce any

documents material to the inquiry. The trial judge ruled specifically that the term " wilfully," as used in section 1330 of the Penal Law, meant " intentionally." The court refused to charge the first request of the defendant which was: " Before you can bring in a verdict of conviction against this defendant, you must find that his refusal to produce documents, under and pursuant to said subpœna, was the result of a wilful determination to resist the lawful authority of said committee and not the result of an honest belief on the part of the defendant that he was acting within his rights." He also refused to charge the second request: " If you find there was reasonable ground for the defendant contending and believing that such documents called for by the subpœna were not material to the housing investigation in which the Committee was then engaged and that the defendant acted in good faith and in the belief that said papers were immaterial, then your verdict must be for the defendant." He refused to charge the fourth request, which is as follows: " It is not the intention of the law to put in jeopardy a man who fairly and honestly asserts his rights as a witness, by refusing to produce documents relative to his private business before a legislative committee, in cases where a fair question is raised as to his rights." He refused to charge the fifth request: " Before the jury can decide that the refusal to produce the papers called for by the subpœna was a wilful refusal within the meaning of section 1330, they must find that the refusal was in consequence of a deliberate design on the part of the defendant to disobey a lawful subpœna," to which was cited *Horton* v. *Equitable Life Assurance Society* (35 Misc. Rep. 495). He also refused to charge the fourteenth request, which is as follows: " In considering whether or not the defendant wilfully refused to produce the documents called for, you can take into account his claim of fear that such disclosure would endanger the lives of his operatives." To each of these refusals exception was duly taken.

It is true he added that they might take into consideration the attitude of the witness upon the stand and his conduct throughout his examination, as to whether it indicated a defiance of the committee and a willful disregard of its mandate. But in closing his charge he stated: " If you believe that it has been established beyond any reasonable doubt that a committee of the Legislature was in session, that this committee was authorized to summon witnesses, that the defendant was present before this committee, that he had been given reasonable notice to produce the reports which I have heretofore charged you were material and proper in that investigation, and that the defendant wilfully, *that is, intentionally refused to produce* these reports, it would be your

duty under your oaths to find the defendant guilty as charged." And to that charge exception was noted.

His refusal to produce these documents was based by himself, when before the committee, upon two grounds. One was that the disclosure of the reports from his subordinates acting as spies would endanger the lives of his subordinates, and the other that such reports were not pertinent to the inquiry. His manner before the committee can hardly be shown upon the record, but is stated to have been insolent and to have indicated that his refusal was willful. The record, however, shows very clearly that he was of the opinion that those reports were not pertinent to the inquiry, and there is nothing to indicate that that opinion was not honestly entertained, and his attitude before the committee might well have been explained by the attitude of the examining counsel. There is nothing in the record to show that his refusal to produce his reports was not prompted by an honest belief on his part that they were not material to the inquiry. The fact that he intended not to answer is not disputed, and if an intentional refusal to produce documents be deemed, as charged by the trial court, a willful refusal, there was little left for the jury to determine. It is true the trial judge did submit to the jury whether the proper time was given to him to consult counsel, and that was the only question which was in fact submitted to the jury. The witness stated that he would like twenty-four hours to consult counsel. The committee adjourned for lunch for an hour and a half, at which time he made no attempt to consult counsel. That fact was submitted to the jury for their determination of the question whether proper time was given to him to consult counsel. In the trial of a criminal case all questions of fact are exclusively for the jury to determine. (Code Crim. Proc. § 420; *Howell* v. *People*, 5 Hun, 620; affd., 69 N. Y. 607; *People* v. *Dishler*, 38 Hun, 175; *People* v. *Upton*, Id. 107.)

That the charge of the court as to what constituted a " wilful " refusal to produce these papers was erroneous, has been held by this court in *People* v. *Luft* (192 App. Div. 713). The opinion of this court was there based in the main upon the opinion of the Court of Appeals in *Wass* v. *Stephens* (128 N. Y. 128), where the rule was stated: " But the word ' wilfully ' in the statute means something more than a voluntary act, and more also than an intentional act which in fact is wrongful. It includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness." (See, also, *People* v. *Calmbacher*, 103 Misc. Rep. 408; *People* v. *Bowie*, 166 N. Y. Supp. 905.)

The interpretation given to the statute by the learned trial justice is not only a harsh interpretation but would be a most unjust interpretation to a witness called before an investigating committee. The powers allowed to such a committee are necessarily exceedingly broad. They necessarily include a search into the subject-matter of the investigation far beyond the scope of a judicial trial. They are not confined to evidence such as would be required upon a trial at law. But their powers are not unlimited. Their inquiry is confined to facts relevant to the inquiry. The relevancy of the inquiry may be adjudged in contempt proceedings wherein the witness may be allowed to purge a contempt by giving the evidence adjudged in that proceeding to be relevant. A statute making it a crime to refuse to answer a question determined only by the committee to be relevant would be subject to the challenge of unconstitutionality. The constitutional rights of a witness have here been sought to be protected by the requirement that the evidence sought must be material and also must be willfully withheld. It is a well-settled rule that a criminal statute must be strictly construed. This construction is not satisfied by a construction of the word " wilfully " as meaning only an " intentional " refusal. That intention must be based upon an intention to evade the law, and whether such an intent exists must be determined by the jury as a matter of fact. Such a refusal to answer, based upon an honest conviction of the irrelevancy of the examination, is not willful. Nor can it be so ruled as matter of law or fact in a prosecution under this statute. The same rule obtains in a prosecution for a refusal to produce documents.

Without passing, therefore, upon other questions raised, the interpretation given to the Penal Law under which this defendant has been convicted, that an intentional violation of an act is of itself a willful violation of the act, requires a reversal of the judgment and the granting of a new trial.

Judgment should be so ordered.

CLARKE, P. J., PAGE and MERRELL, JJ., concur upon the ground that it was not shown and it does not appear that the documents called for were material and pertinent to the inquiry, and for error in the charge and refusals to charge specified in the opinion of Mr. Justice SMITH; DOWLING, J., dissents.

Judgment reversed and new trial ordered. Settle order on notice.