THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ABRAHAM S. BAYLINSON, Appellant.

First Department, November 28, 1924.

Crimes — violation of Penal Law, § 43 — defendant is secretary of Society of Independent Artists — alleged crime is based on exhibition of picture by member of society at private exhibition — picture portrayed Christ as violator of National Prohibition Act — member of society had right to hang picture without authority from defendant — no objection to picture was made by public — statute not violated — defendant was not connected with alleged crime — conviction cannot be sustained on ground that picture tended to or might outrage public decency.

The defendant, the secretary of the Society of Independent Artists, was improperly convicted of a violation of section 43 of the Penal Law, which provides that a person who willfully and wrongfully commits any act which seriously disturbs or endangers the public peace or health, or which openly outrages public decency, is guilty of a misdemeanor, under the evidence in this case which is to the effect that the society of which the defendant is secretary conducts a private exhibition of paintings, an admission to which is charged; that a member of the society is entitled to hang a painting at the exhibition without permission of the defendant; that a member of the society hung a picture in the exhibition rooms which portrayed a scene at the wedding feast at Cana in Galilee, where the Saviour performed His first miracle by transforming the contents of the water pots into wine for the wedding feast, in which former Congressman Volstead is represented as standing with his right hand upon the Saviour's shoulder, his left directing attention to the vessels of wine, one of which lies broken upon the floor, and William Jennings Bryan is represented as pouring out the contents of another vessel, while Mr. Anderson, former superintendent of the Anti-Saloon League, is depicted as standing in the open doorway with his eyes upon the Saviour; and that no objection was made by any visitor at the exhibition rooms to the picture in question.

The defendant was improperly convicted, *first*, because there was no evidence that the picture in question disturbed or endangered the public peace or openly

outraged public decency and, *second,* because the defendant was not connected with the hanging of the picture and did not have any authority to say whether it should be hung or not, and he did not, therefore, willfully do the acts charged.

The conviction cannot be upheld on the ground that the picture exhibited tended to outrage public decency or might outrage public decency, since the statute does not prohibit acts of that character but is expressly limited to acts which actually do disturb or endanger the public peace or which actually do openly outrage public decency.

APPEAL by the defendant, Abraham S. Baylinson, from a judgment of the Court of Special Sessions of the City of New York, rendered on the 25th day of May, 1923, convicting him of a violation of section 43 of the Penal Law.

*Otterbourg, Steindler & Houston* [*Charles A. Houston* of counsel], for the appellant.

*Joab H. Banton, District Attorney* [*Felix C. Benvenga, Assistant District Attorney,* of counsel; *Edwin B. McGuire, Deputy Assistant District Attorney,* with him on the brief], for the respondent.

MERRELL, J.:

Section 43 of the Penal Law provides that: " A person who wilfully and wrongfully commits any act which seriously injures the person or property of another, or which seriously disturbs or endangers the public peace or health, or which openly outrages public decency, for which no other punishment is expressly prescribed by this chapter, is guilty of a misdemeanor   *   *   *.'"

The judgment of conviction from which the defendant has appealed recites his conviction for " the misdemeanor of unlawfully violating section 43 of the Penal Law, committed in the city and county of New York on February 21, 1923 (wilfully and unlawfully outraging public decency)." The crime charged in the information was that the defendant did " cause and permit to be exhibited to the public in a certain hotel called Waldorf-Astoria, there situate, a certain picture and painting in the following form, to wit: The presence of Christ at the marriage feast in Cana, in Galilee after having performed His first miracle of changing the water in the water pots into wine at the request of the Blessed Virgin Mary, said picture or painting having inserted in modern street clothes pictures intended to be the persons of ex-Congressman Volstead, William H. Anderson and William Jennings Bryan, the said Volstead holding his right hand upon the shoulder of Christ, William Jennings Bryan spilling the wine out of one of the pots filled with the same, while Anderson is seen standing in the doorway nearby behind Volstead and Bryan, the same being a picture or painting obviously offensive to the general

First Department, November, 1924.          [Vol. 211

public decency and to the religious sensibilities of divers good citizens, in that it purported to portray Christ as a violator of the National Prohibition Law and the Prohibition Law of the State of New York against the form of the Statute in such case made and provided and against the peace of the People of the State of New York."

The picture was shown at an annual exhibition of the Society of Independent Artists, a domestic corporation, of which society the defendant was the paid secretary. The society holds annual exhibitions of paintings, sculpture, and other works of art of its members. The evidence shows that in the month of October in each year notices are sent out to former exhibitors and those who are thought to be interested in the approaching annual exhibition, that such an exhibition will be held and inviting the persons notified to become members of the association. Annual dues are exacted from the members, the amount thereof being dependent upon the expense of conducting the exhibition in each year. The testimony of the president of the society was that once a man paid his membership dues he was entitled to have the privilege to show one or two pictures, according to the size of the pictures, at the annual exhibition; that the society did not act as a jury; and that payment of the membership dues entitled the artist to have his picture or pictures hung. The defendant had no voice or discretion as to whether any picture brought by a member of the society should be hung. Membership in the society was sufficient to entitle any one to hang his picture at the annual exhibition, and no one had authority to deprive him of such right. The picture alleged to have been offensive was painted by an artist by the name of J. Francois Kaufman, who was a member of the society and hung the picture by virtue of such membership. The evidence did not show that the defendant took any part in the hanging of the picture, which was one of over eight hundred hung at the annual exhibition of the society held at the Waldorf-Astoria Hotel in February, 1923. The exhibition that year lasted for three weeks. A paid admission was charged to all except members of the society and some others who had received complimentary tickets of admission. A regular cashier and ticket seller was provided, whose duty it was, in behalf of the society, to sell tickets to its exhibition. During the three weeks' course of the exhibition in February, 1923, about 10,000 people were admitted thereto, and during the course of the exhibition there was no incident of disorder or a breach of the public peace, nor was there any evidence that the display of the picture outraged public decency.

The picture itself portrays a scene at the wedding feast at Cana,

in Galilee, where the Saviour performed His first miracle by transforming the contents of the water pots into wine for the wedding feast. The picture portrays the Saviour, with the mother of Jesus in an attitude of adoration, with other participants of the feast about the table. There is also shown the likenesses of ex-Congressman Volstead, William Jennings Bryan and William H. Anderson in present-day garb. Volstead stands with his right hand upon the Saviour's shoulder, his left directing attention to the vessels of wine, one of which lies broken upon the floor, the contents of another is being spilled out by William Jennings Bryan, while the remaining four stand full of wine at the Saviour's feet. Anderson, the erstwhile superintendent of the Anti-Saloon League, stands in the open doorway with his eyes upon the Saviour.

According to the testimony of the police officer, the painting hung at the exhibition bore the title, " Father, forgive them, for they know not what they do." Notwithstanding such title, the conception of the artist evidently was to arouse a prejudice in the minds of the public by portraying the physical destruction, by those zealous in the enforcement of existing laws prohibiting the manufacture and sale of intoxicating liquors, of that which the Saviour, through the performance of his miracle, had created. While the work of the artist might have the tendency to create a prejudice in the public mind against the acts of those who were bound to destroy that which the Saviour approved, the arousing of such a sentiment falls far short of outraging public decency, of which the defendant stands convicted. We are unable to see anything about the picture which through any strain of imagination could even tend to outrage public decency. Undoubtedly the picture may be said to be sacrilegious in that present-day mortals are portrayed as venturing to oppose their judgment as to what is right against that of Christ, but the defendant is not convicted of a sacrilege or blasphemy, nor is either made a crime under any law of this State. The conception of the artist may be said to be in bad taste, but such bad taste in nowise tends to outrage public decency. The word " decency " has a well-defined meaning. Though this picture may be open to criticism, we do not think it can be said to be indecent within the usually accepted meaning of that word. The statute contemplates an act which seriously disturbs or endangers the public peace or which openly outrages public decency. Surely the hanging of the picture, even though the defendant were sufficiently connected therewith to make him chargeable, did not disturb or endanger the public peace. Ten thousand people attended the exhibition, and no single one of them, so far as the evidence disclosed, objected to

the picture or manifested any disposition towards a breach of the peace. The same may be said as to the picture outraging public decency. The evidence is to the effect that no objection was raised to the picture save by the police officer who viewed the same, laid the information, and procured the summons for the defendant's arrest. The defendant was not convicted of the crime of endangering the peace, but, as stated in the judgment, of " wilfully and unlawfully outraging public decency." Even though the picture could be said to have been indecent within the contemplation of the statute, the People failed to connect the defendant with the commission of the crime. If any offense was committed, it was by the artist who painted and hung the picture, rather than the defendant, who was merely the secretary of the association, and who took no part in either the selection or the hanging of the picture, and who did not even know of its existence until his attention was called to it by the police officer who discovered the alleged offensive picture.

The picture was hung under a contract between the artist and the association, and the defendant was powerless to prevent the display of the picture or to cause its removal. Under such circumstances we do not think the defendant can be said to have been a person who willfully and wrongfully committed an act which either seriously disturbed or endangered the public peace or which openly outraged public decency within the purview of the Penal Law. We can ascribe to the defendant no act of willfulness or wrongdoing in the display of the picture. Willfulness implies an intent on the part of the wrongdoer. There is not the slightest evidence in the case that the defendant acted willfully or with wrongful intent. The absence of proof of any willful intent on the part of the defendant absolves him from guilt. (*People* v. *Foster*, 204 App. Div. 295; affd., 236 N. Y. 610; *People* v. *Marrin*, 205 id. 275; *People* v. *Martinitis*, 168 App. Div. 446.) *People* v. *Martinitis* (*supra*) was decided by the Second Appellate Division and concerned an alleged violation of section 43 of the Penal Law. In that case the Appellate Division said: " This is the familiar provision which makes a misdemeanor any willful and wrongful act which seriously injures the person or property of another, or which seriously disturbs or endangers the public peace or health, or which openly outrages public decency, for which no other punishment is expressly prescribed. This defendant negligently drove on the wrong side of the highway, which resulted in injury to person and property. But this section of the Penal Law requires that the injuring act shall be *willful*. There must exist an intention designedly and purposely to cause injury. Not every intentional

act is willful. It must be with wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness." (Citing *Wass* v. *Stephens,* 128 N. Y. 123.)

The Court of Appeals in *Wass* v. *Stephens* (*supra*) said: " But the word ' wilfully ' in the statute means something more than a voluntary act, and more also than an intentional act which in fact is wrongful. It includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness."

The Court of Appeals in *People* v. *Stevens* (109 N. Y. 159, 163) said: " But where a particular intent is an ingredient of the crime, the mere doing of the prohibited act does not constitute the crime unless accompanied with unlawful intent."

The People seek to uphold the conviction of the defendant upon the ground that the picture exhibited at the exhibition tended to outrage public decency or might outrage public decency. There was an entire absence of proof that public decency was outraged as contemplated by the statute. The statute does not prohibit acts tending or likely to outrage public decency, but it expressly relates to acts which do disturb or endanger the public peace or which do openly outrage public decency. The distinction is quite apparent. Here we are dealing with acts and not possibilities. We cannot conceive that the exhibition of a picture in a collection of 800 works of art in private rooms of a hotel to which the public is admitted only on the payment of an admission fee, and where there is not the slightest indication of a public disturbance or that public decency is outraged, can be said to be a violation of said section of the Penal Law. In order to convict the defendant, the Special Sessions must have held, notwithstanding the absence of any evidence of complaint or disturbance, that the picture itself was indecent and, therefore, must outrage public decency. There was neither proof that it did so nor that it was intended so to do.

The judgment of conviction should be reversed, the information dismissed, and the fine paid by the defendant remitted to him.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

Judgment reversed, information dismissed, and fine remitted.