Joseph A. Martinis, J.
Acting County Judge. Pursuant to the direction of the Grand Jury, an order was made and entered in this court, directing the District Attorney to file an information in the Court of Special Sessions, charging the defendants *546 with violation of subdivision 2 of section 1984 of the Penal Law (misconduct of railroad employees). By this motion, the defendants challenge the information thus filed, and move for an order granting them permission to inspect the Grand Jury minutes and for an order vacating the order directing the filing of the information, or in the alternative for an order dismissing the information on the grounds of insufficiency in law and fact.
The statute under which the information has been filed, reads as follows:
“ 2. An engineer, conductor, bralceman, switchtender, or other officer, agent or employee of any railroad corporation, who wilfully violates or omits his duty as such officer, agent or employee, by which human life or safety is endangered, the punishment of which is not otherwise prescribed,
“ Is guilty of a misdemeanor.”
It is to the propriety of the accusation as expressed by the information, and considered in the light of the facts and law that this court now addresses itself.
The defendants Cummings and McManus were employed as engineer and fireman, respectively, by the New York Central Railroad. On the morning of October 7,1960, in their capacities of engineer and fireman, on a Diesel switch engine, they picked up a train of some 53 cars and a caboose at the Westchester Avenue Yard. From Westchester Avenue, the train proceeded north on the westbound tracks of the Central. As it approached the University Heights station at Fordham Road, the train had reached a speed of 20 miles per hour. A tape which was used to record the speed of the engine, indicated that this speed, 20 miles per hour, was the maximum speed attained by the engine since leaving the yard. At a point north of the University Heights station the defendants’ train struck the rear of a train which had been standing on the tracks ahead, with consequent injuries, damage and death.
The defendants were subsequently arrested, and although originally held on a charge of criminal negligence (Penal Law, § 1053-a), the Grand Jury failed to indict them for this felony. Instead the Grand Jury directed the District Attorney to file an information in the Court of Special Sessions of the City of New York, charging the defendants with a violation of subdivision 2 of section 1984 of the Penal Law.
This court has ordered the Grand Jury minutes, and the foregoing are the essential facts considered by the Grand Jury. The following are the facts in greater detail.
Neither defendant was under the influence of liquor, narcotics nor the like. Nor was either of them ill at the time of the acci *547 dent. Their train, on its approach to the University Heights station, reached a yellow signal light, which called for caution, and was notice to be prepared to stop immediately. The next signal light was some 250 yards east of a signal control tower. This signal is the main signal, and controls all four tracks of the railroad, controlling the movements of all trains coming into Grand Central. The control tower is at a point east of the Marble Hill station, at Kingsbridge Junction. The signal lights on this signal were set at red over red over red, calling for a stop at the signal. Beyond the signal was train KN2 which had been at a standstill for about an hour and one half prior to the accident. This train extended from some 100 feet east of the signal tower to a point west of the tower. The caboose was its last car. After passing the yellow signal light, at a speed of 20 miles per hour (the speed limit at this signal being 30 miles per hour), defendants’ train passed the danger signal of red over red over red, continuing until it crashed into the caboose of train KN2, killing one of the occupants and seriously injuring the other.
Prior to taking their train out of the Westchester Avenue Yards, the brakes on defendants’ train were examined and found to be in good working order.
In the caboose, which, was at the head of defendants’ train, and its second ear, at the time of the accident were four persons. Three of these occupants were brakemen, and the fourth was conductor of the train. Three of them testified that they felt the application of the train’s brakes prior to the accident. The fourth testified that he felt a bunching action,4 ‘ a back action or shutting off of the power of the engine, nothing unusual ”, but nevertheless a condition that would indicate a sudden stop. Two of the brakemen testified that a second before the impact they heard the engine whistle blown.
The statements of the defendants were both to the effect that the brakes were not operative, that although applied at the appropriate points before the red signal there was failure to hold. There is no dispute as to the signals or their meaning.
Inspection of the Diesel engine after the accident disclosed the locomotive throttle to be in the “ off ” position, and the automatic brake valve to be in the “ emergency ” position. The reverser had not been thrown into reverse, and the independent brake valve, which applies air to the locomotive only, having no connection with the brakes coming into the train was in the off position. The fireman’s emergency brake valve was not used. This is an emergency feature to enable the fireman, in case of the disablement of the engineer, or perhaps a malfunction of any *548 segment of the brake function, to direct the train brake in emergency. Examination of the brakes on each of the cars that made up the train, made subsequent to the accident showed that 49 cars had brakes in good working order; 2 did not.
There is also evidence that an angle cock was missing from the inner end of the third head car of defendants’ train. This is a device through which air must pass before the brakes can be applied. This part had been broken, so that the handle and keys were missing, and were not recovered at the scene of the accident. The moving papers contain an affidavit of an alleged expert to the effect that an angle cock is a 3-inch valve controlling the flow of air through the brake pipe, and is manually operated by a handle 6 to 8 inches long and about 1% inches wide. It is argued that so large a device would have been found if broken from the ear at the scene of the accident.
These are the facts upon which the information was filed charging the defendants with having willfully violated or omitted their duties as railroad employees. Thus the Grand Jury charged the defendants with having run their locomotive ‘ ‘ through and beyond a danger signal ’ ’ and £ ‘ did then wilfully and lawfully omit their duty by omitting and failing to apply the brakes ”. The information charges the defendants with having 1 ‘ wilfully and unlawfully ’ ’ violated their duties in operating the engine ££ through and beyond a certain railroad danger-signal # * * did wilfully and unlawfully omit, fail and neglect to apply the brakes ”.
The validity of the information depends on the interpretation to be given the word££ wilful ”. This is the determining feature in deciding whether there was a violation of the statute in question (People v. Muller, 226 App. Div. 773; People v. Bennett, 252 App. Div. 770).
In penal statutes, which call for strict construction, 1 £ wilful ’ ’ means more than intentional or voluntary. It connotes a bad purpose, a willingness to do an act knowingly and with evil design. (People v. Martinitis, 168 App. Div. 446; People v. Foster, 204 App. Div. 295; People v. Baylinson, 211 App. Div. 40; Wass v. Stephens, 128 N. Y. 123; United States v. Murdock, 290 U. S. 389; Screws v. United States, 325 U. S. 91; 22 C. J. S., Criminal Law, § 31, p. 90.) The Court of Appeals has recently spoken on the subject, holding the term to refer to “ an act consciously and deliberately done ” (People v. Broady, 5 N Y 2d 500). It signifies a course of conduct marked by the exercise of volition rather than that which is accidental, negligent or involuntary.
*549 Examination of the portion of the statute under which the information was filed, gives clear indication of the legislative intent. The statute does not punish for all violations or omissions of duty. Punishment is called for only in cases of ‘ ‘ wilful ” violations or omissions. Thus we can infer that the severity of the statute was lessened by the requirement that the act or omission be conscious and deliberate.
The proof before the Grand Jury shows no such willful acts or omissions sufficient to sustain the information. Before the train started its run, all required safety precautions had been taken. During the short period of its journey there were no great bursts of speed. Twenty miles per hour in a 30-mile zone is not reckless, but is consistent with proper control. Before the impact the power was shut off and the brakes applied. Even a warning signal was heard. These are acts inconsistent with willfulness.
But a red warning signal was passed, and there was an impact with the train ahead. The record is barren of direct evidence that the defendants deliberately and consciously passed the danger signal. Nor is there direct proof that the locomotive was driven with recklessness or abandon, or with complete disregard for the consequences, or with a deliberate and conscious intent to endanger human lives or property. Nor was there any admission that they disregarded the danger signal. The direct evidence showed the opposite to be true. The brakes were applied, the power shut off, facts corroborated by the riders in the caboose. Nor was there circumstantial evidence by which it could be inferred that defendants intended to pass the signal light. Here the circumstantial evidence grows out of the admitted fact that the red signal was visible, and that defendants’ train did pass it and struck the train ahead. These facts do infer negligence (People v. Chalupka, 32 N. Y. S. 2d 688, 689). But the inference of negligence to whatever degree, does not constitute or equate the term willful, within the context of the statute (New York, New Haven & Hartford R. R. Co. v. Gray, 240 P. 2d 460, 464). Negligence is an absence of reasonable care. “ Wilful ” on the other hand goes much further. It requires a direct showing as its essence, of “ an act consciously and deliberately done ” (People v. Broady, supra.)
There was testimony taken by the Grand Jury concerning the conduct of the defendants subsequent to the accident. Several hours after the accident the defendants were told that they had been released from further attendance at the scene. There was additional evidence that they then sought advice and guidance from their union representative, and that they were advised *550 by Mm that under his interpretation of the railroad rules, they could rest for eight hours before being submitted to interrogation by claims investigators and newspaper men. There was also evidence that the police were anxious to obtain facts, and the inference could be drawn that the police wished to interrogate defendants. Later, on the same day of the accident, the union representative informed the police that defendants would appear at the police station on the following morning, which they did. There were no charges existing at that time against either defendant, and no warrant for their arrest had been issued.
Their conduct permits no inference of flight, significant of consciousness of guilt. In the light of the circumstances defendants’ conduct is equally or more consistent with innocence, and is therefore of no significance (People v. Stilwell, 244 N. Y. 196-199). The facts of departure and absence have no significance ‘ ‘ when the conduct of the accused is equally or more consistent with some other hypothesis. (Wigmore on Evidence [2d edition], section 276; Underhill, Criminal Evidence [3d edition], section 303.) ” (People v. Stilwell, supra, p. 199.)
It is well settled that if ‘ ‘ proof is by means of circumstantial evidence the facts from which the inference of the defendant’s guilt is drawn must be established with certainty; they must be inconsistent with Ms innocence and must exclude to a moral certainty every other reasonable hypothesis ” (People v. Jackson, 255 App. Div. 688, 689). Conjecture is insufficient.
I am therefore constrained to hold that in the absence of circumstances which establish that the act was consciously and deliberately done, that the act was not voluntary, but accidental. The defendants’ motion to dismiss the information is therefore granted, and the defendants are discharged.