In the Matter of WILLIAM LEWITUS, Petitioner, *v.* WILLIAM S. HULTS, as Commissioner of the Department of Motor Vehicles, Respondent.

Supreme Court, Special Term, Bronx County, December 26, 1966.

*Deutsch Spring & Berrol* for petitioner. *Louis J. Lefkowitz, Attorney-General* (*Philip Weinberg* of counsel), for respondent.

Owen McGivern, J.  In this article 78 proceeding petitioner seeks to annul or modify the revocation of the petitioner's driver's license by the Commissioner of Motor Vehicles, the respondent herein.  The facts are as follows:

The petitioner is now a resident of the County of Westchester, State of New York, having resided for the past year in the Town of Greenburgh.  Prior to the establishment of his present residence, the petitioner resided in the State of Ohio, and prior to such residence, had formerly lived in the State of New York. When he originally lived in New York, he had been duly licensed by the State of New York to operate a motor vehicle for some 15 years, during which period his operator's license had never been suspended or revoked.

Upon his change of residence from the State of New York to the State of Ohio, petitioner permitted his New York operator's license to expire and he obtained an Ohio driver's license.  Said Ohio license was never suspended or revoked.

Upon petitioner's reestablishment of his residence in the State of New York, petitioner made application for a New York operator's license, took a driving test, passed same, and an operator's license was duly issued to him in March, 1966.

On March 19, 1966, the petitioner was issued a traffic summons charging him with speeding at the rate of 45 miles per hour in a 35-mile-an-hour zone.  On May 26, 1966, the petitioner pleaded guilty to the charges in the Criminal Court of the City of New York and was directed to pay a fine of $10.

On or about July 16, 1966, the petitioner received a notice purporting to revoke his license pursuant to section 501 of the Vehicle and Traffic Law of the State of New York.  By this article 78 CPLR proceeding, petitioner seeks to stay the revocation of his operator's license.

The petitioner is employed, uses his motor vehicle in the course of his employment, drives an average of over 15,000 miles per year, received no traffic tickets during his five years' residence in Ohio and during the last six years received only one for an improper turn.

The statute involved in this proceeding is section 501 (subd. 1-b, par. a) of the Vehicle and Traffic Law of the State of New York, effective October 1, 1965, known as chapter 49 of the Laws of New York 1965.  That section provides: '' A license issued pursuant to subdivision one of this section shall be considered probationary only, for a period of six months from the date of issuance thereof.  Any such license shall be cancelled upon the basis of evidence that the holder thereof has been (i) convicted of a violation, committed during such six month period, of any

provision of section * * * [1180] of this chapter or any ordinance or regulation limiting the speed of motor vehicles ''. In the Governor's message approving '' probationary drivers licenses '' (N. Y. Legis. Annual, 1965, p. 503), the following is found: In approving chapter 49 of the Laws 1965, which provides for the issuance of a probationary license to *new* drivers, the Governor stated:

'' This bill would provide for a six-month probationary license for every *new* driver who must take a road test to obtain a license. Such a probationary license would be subject to mandatory cancellation * * * upon a single conviction of speeding * * *.

'' *New* drivers are involved in a disproportionately high number of accidents. Furthermore, experience has shown that new drivers convicted of traffic violations committed during their *first* six months of driving are twice as likely as other drivers to be guilty of other violations in the future.

'' Traffic safety experts are persuaded that the *first* months of driving are the formative period for driving habits and attitudes, and that these habits and attitudes strongly tend to carry over into the succeeding periods of time. These first months of driving, therefore, represent an important time for drivers to learn the importance of traffic safety.

'' The bill will help to emphasize to *new* drivers the importance of safe driving habits and attitudes.'' (Emphasis supplied.)

It appears that while petitioner apparently comes within the definition of the holder of a probationary license in accordance with section 501 (subd. 1-b, par. a), in fact, he is not a newly licensed driver. He has had a New York operator's license for more than 15 years, which was never revoked or suspended. He had obtained a license in Ohio which was never revoked or suspended.

It is the court's opinion that it was not the intention of the Legislature to have this section of the Vehicle and Traffic Law apply to persons who have driven for a considerable length of time, but merely to new operators who are just commencing to drive.

Black's Law Dictionary defines the word '' new '' as an element in numerous compound terms and phrases of the law which denotes novelty, or the condition of being previously unknown or of recent, fresh origin.

Not only was this not the formative period of driving for the petitioner, but it was not a novel situation, unknown or of fresh origin to him.

Funk and Wagnall's defines " probation " as any proceeding to prove the truth of anything or to ascertain or test character, qualifications, attainments, or the like. A probationer is defined as one who is on probation or trial and that he may give proof of fitness for some place or state.

Here, the character, qualifications and attainments of the petitioner to drive a motor vehicle have already been proved. He has passed the driving test several times, has been operating a motor vehicle for 20 years, and never has had his license suspended or revoked.

Furthermore, paragraphs b to d of subdivision 1 of this same section of the Vehicle and Traffic Law provide that the subdivision which is the basis for the revocation in the situation shall not apply to renewals issued pursuant to subdivision 5 of this section. This section dealing with a renewal of an expired license would indicate that it was not the intention of the Legislature to have the section apply to drivers such as the petitioners who have had their licenses renewed.

It is the duty of this court, in construing legislative enactments, to harmonize the same and give meaning to all provisions thereof (*People* v. *Allison,* 16 N. Y. S. 2d 571; *Matter of Town of Nichols* v. *County of Tioga,* 130 Misc. 217). Nor may this court overlook the rule that penal statutes must be strictly construed (*People* v. *Ryan,* 274 N. Y. 149; *People* v. *Foster,* 204 App. Div. 295) and that where there is doubt, the statute must be construed strictly in favor of the accused (*People* v. *Lowe,* 209 App. Div. 498, 501).

The Court of Appeals, in *People ex rel. Cosgriff* v. *Craig* (195 N. Y. 190, 197) stated: " In cases of doubtful construction or of conflicting statutory provisions, that interpretation should be given which best protects the rights of a person charged with an offense ".

The contention of the petitioner that section 335-a of the Code of Criminal Procedure was not complied with is without merit.

Section 335-a of the code provides that the presiding Criminal Court Judge, before accepting a plea of guilty to a traffic violation such as is involved in section 501 (subd. 1-b, par. a) of the Vehicle and Traffic Law of the State of New York, must inform the defendant substantially as follows: " A plea of guilty to this charge is equivalent to a conviction after trial. If you are convicted, not only will you be liable to a penalty, but in addition your license to drive a motor vehicle or motor cycle and your certificate of registration, if any, are subject to suspension and revocation as prescribed by law."

It is conceded by the petitioner that the printed summons, in lieu of the oral warning and alternatively used, issued to the petitioner, contained the statutory warning, but he argues that the type making up the print was in violation of the statute. This attempt to find an infirmity in the suspension based on the size of the type and the location of the warning on the summons form is no more than an attempt to exalt form over substance.

Notwithstanding, it is the opinion of this court that the action of the respondent was not within the legislative intent. Therefore, the order is annulled and revoked.